Case 4:15-cv-02037   Document 43   Filed in TXSD on 12/13/16   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
December 13, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VANCE ANDERSON, *et al.*, § | | |
|    Plaintiffs, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-15-2037 |
| § | | |
| HEARTS WITH HOPE § | | |
| FOUNDATION, § | | |
|    Defendant. § | | |

## **MEMORANDUM AND ORDER**

This Fair Labor Standards Act ("FLSA") case is before the Court on the Motion for Summary Judgment [Doc. # 40] filed by Defendant Hearts With Hope Foundation ("HWHF"), to which Plaintiffs Vance Anderson, *et al.*, filed a Response [Doc. # 41], and HWHF filed a Reply [Doc. # 42]. Having reviewed the full record and applied relevant legal authorities, the Court **grants** the Motion for Summary Judgment.

## **I.    BACKGROUND**

HWHF is a nonprofit corporation that provides residential care for children who have been the victims of abuse, neglect and/or abandonment. HWHF operates two group homes, one for boys from 6 to 17 years of age and one for girls in the same age range. The boys' home has capacity for 14 residents, while the girls' home has capacity for 19 individuals.

Children in need are placed at HWHF through the Child Protective Services ("CPS") division of the Texas Department of Family and Protective Service ("DFPS"). When space is available at HWHF, CPS sends referral packets with information on children needing placement. HWHF reviews the referral packets, which include information regarding a child's behavior, intellectual level, background, and any psychological or other diagnosis. Based on that review, HWHF determines whether to accept any of the children into one of the two group homes. HWHF does not accept children with an IQ below 80, and it does not accept children who have been diagnosed as psychotic or schizophrenic. Neither of HWHF's group homes is licensed to accept children with intensive psychiatric needs.

Plaintiff Anderson and other similar employees were employed as Direct Care Personnel with HWHF. Neither they nor any other HWHF employees are licensed to provide individual or group counseling, and they are not qualified to diagnose a child's medical, psychiatric or psychological conditions. None of HWHF's employees are physicians, psychologists, psychiatrists, or licensed counselors. Children at HWHF have access to these third-party professionals, if needed, when they come to HWHF to provide periodic services at the group homes.

In early 2012, HWHF's Human Resources ("HR") Director attended a payroll seminar that was not directed specifically toward group homes for children. At that

time, the HR Director became concerned that HWHF should be paying overtime under the FLSA. HWHF telephoned someone with the Department of Labor ("DOL") who stated that he thought HWHF might be covered under the FLSA. Therefore, in February 2012, HWHF began paying – and paid retroactively for the preceding two years – overtime wages.

In approximately August 2012, the DOL Wage and Hour Division ("WHD") conducted an audit of HWHF, including a visit to one of the group homes. As a result of that audit, the WHD representative advised HWHF that it was not covered under the FLSA. Nonetheless, HWHF continued to pay its employees overtime wages.

In December 2013, the WHD conducted a second audit of HWHF, again traveling to one of the HWHF group homes. Following the December 2013 audit, the WHD again informed HWHF that it did not fall within the FLSA's coverage. This time, the WHD representative explained the decision in detail, referring HWHF to applicable statutes, the WHD handbook, and other relevant information. Specifically, the WHD representative referred to the DOL Field Operations Handbook § 12g18, which provides:

> Private nonprofit institutions providing care for neglected and dependent children are not covered by the enterprise provisions of the FLSA, provided that such institution is not operated in conjunction with a hospital, covered institution, or school within the meaning of sections 3(r) and 3(s) of the Act.

Field Operations Handbook, Appendix 3 to Plaintiffs' Response, § 12g18. As a result, effective March 8, 2014, HWHF began to pay overtime compensation only for hours over 100 in an 80-hour pay period, rather than for hours worked in excess of forty per week.

Plaintiffs allege that Defendant violated the FLSA by failing to pay Direct Care Personnel proper overtime wages for all hours they worked in excess of forty per week. After conditional certification of this case as a collective action of Direct Care Professionals who worked at HWHF, and after the completion of discovery, Defendant filed its Motion for Summary Judgment. HWHF asserts that Plaintiff failed to present evidence that establishes enterprise coverage under the FLSA.[1] The Motion for Summary Judgment has been fully briefed and is now ripe for decision.

## II.  **STANDARD FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710

---

[1] Defendant also seeks summary judgment that Plaintiffs are not entitled to liquidated damages and that the statute of limitations should be limited to two years. Because Defendant is entitled to summary judgment on Plaintiffs' FLSA claim, these issues are moot.

F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004);

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the

existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075.

## III. ANALYSIS

Under the FLSA, an employee "who is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" is generally entitled to receive overtime compensation for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(2)(C). The FLSA defines an "enterprise engaged in commerce" to include "an institution primarily engaged in the care of . . . the mentally ill or defective who

reside on the premises of such institution" regardless of whether the institution is for profit or not for profit. 29 U.S.C. § 203(s)(1)(B).

Plaintiffs bear the burden to establish that HWHF is subject to enterprise coverage under the FLSA. *See Sobrinio v. Med. Ctr. Visitor's Lodge*, 474 F.3d 828, 830 (5th Cir. 2007); *Mata v. Caring for You Home Health, Inc.*, 94 F. Supp. 3d 867, 872 (S.D. Tex. 2015). Plaintiffs assert that HWHF is covered under the FLSA because it is primarily engaged in the care of the mentally ill. Defendant argues that Plaintiffs failed to present evidence that raises a genuine issue of material fact to support its assertion that HWHF is "primarily engaged" in the care of the mentally ill.

To determine whether there is enterprise coverage pursuant to § 203(s)(1)(B), courts in the Fifth Circuit focus on the "primary, essential, fundamental authority and purpose" for the institution. *See Brennan v. Harrison County*, 505 F.2d 901, 903-04 (5th Cir. 1975). In *Brennan*, the employees of the Harrison County Home for the Poor sought to recover minimum wages and overtime compensation. The Fifth Circuit noted that the "primary, indispensable requirement is that [an applicant] must be an indigent." *See id.* at 903. The applicant's age or illness was "incidental." *See id.* Therefore, because "[i]ndigency, not illness or age, was the indispensable prerequisite for the operation of the home," the employees were not covered by the FLSA. *See id.* at 904.

Courts in other circuits have reached the same conclusion. *See, e.g., Kitchings v. Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1297-98 (M.D. Fla. 2005); *Murray v. R.E.A.C.H. of Jackson County, Inc.*, 908 F. Supp. 337, 340 (W.D.N.C. 1995). In *Murray*, the North Carolina court held that a home for victims of domestic violence and sexual abuse was not "primarily engaged" in the care of the mentally ill because the "most important function of this facility to not to provide permanent housing for individuals who are there because they are mentally ill" and found it "offensive to consider the victims of domestic violence and sexual abuse to be mentally ill based solely on these accidents of life." *Murray*, 908 F. Supp. at 340. The North Carolina court held that the "fact that many, if not all, such victims may also suffer from severe emotional problems, alcoholism, or even true mental illness is merely incidental." *Id.*

In the case at bar, the "primary, indispensable requirement" for admission to either of the HWHF homes is that the child have been abused and/or neglected and in need of a safe, residential environment. A child's mental illness is incidental to HWHF's primary purpose. Indeed, a child is not accepted for admission at HWHF if his mental illness is severe. HWHF is not licensed to care for the mentally ill, and the psychologists and psychiatrists who treat any HWHF resident who suffers from mental illness are third-party contractors selected from a list provided through DFPS.

Because mental illness is not an indispensable requirement for admission to HWHF, Defendant is not "primarily engaged" in the care of the mentally ill.

Plaintiffs argue that HWHF is primarily engaged in the care of the mentally ill because more than 50% of the children at HWHF have emotional problems and receive some type of counseling or therapy. Plaintiffs note that Section 12g02 of the DOL Field Operations Handbook provides that an institution primarily engaged in the care of the mentally ill could be covered under the FLSA if "more than 50%" of its income is attributable to providing residential care to individuals who live on the premises and suffer from a mental infirmity. Plaintiffs have failed to present evidence regarding HWHF's income and what percentage, if any, is attributable to residential care of children who suffer from a mental illness.

Plaintiffs cite to a case from the Southern District of New York in which a home for abused and neglected children was held to be covered by the FLSA. *See Bowrin v. Catholic Guardian Soc.*, 417 F. Supp. 2d 449, 462 (S.D.N.Y. 2006). That case, however, is factually distinguishable. In *Bowrin*, the district court noted specifically that "a child's mental-health status is, in fact, a significant factor to their referral to the program" and that, "by defendant's own admission, fifty to seventy-five percent of [the homes'] residents suffer from a 'severe mental illness.'" *Id.* Here, the uncontroverted evidence is that a child's mental-health status is not a significant factor

in the referral and, indeed, can be a disqualifying factor. Additionally, while a majority of the children at HWHF understandably have some behavioral problems, there is no evidence that the majority are mentally ill. Anderson, the Lead Plaintiff in this case, admitted in his deposition that he does not think HWHF treats the mentally ill. As a result, Plaintiffs' reliance on the DOL Handbook and *Bowrin* is unpersuasive.

Plaintiffs have failed to present evidence that raises a genuine issue of material fact regarding whether HWHF is "primarily engaged" in the care of the mentally ill. As a result, Defendant is entitled to summary judgment.

## IV.    CONCLUSION AND ORDER

Plaintiffs have failed to present evidence that raises a genuine issue of material fact regarding whether HWHF is subject to enterprise coverage under § 203(s)(1)(B) of the FLSA. As a result, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 40] is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **13th** day of **December, 2016**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE